UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

JUSTIN JAMES EDMISTEN,

Petitioner,

v.

WILLIAM GITTERE,[1] *et al.,*

Respondents.

Case No. 2:15-cv-00952-RFB-NJK

**ORDER**

## I.  INTRODUCTION

This is a represented habeas corpus proceeding under 28 U.S.C. § 2254, brought by Nevada state prisoner Justin James Edmisten ("Petitioner" or "Edmisten"). ECF No. 41. This matter is before the Court for adjudication on the merits of the remaining grounds in the amended petition.[2]

Edmisten challenges his judgment of conviction for robbery, entered pursuant to a plea agreement, for which he is currently sentenced to 2 to 5 years imprisonment. ECF No. 16-25.

The amended petition asserts the following remaining grounds for relief:

Ground 1: Edmisten was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments because counsel failed to challenge (1) the indictment; (2) eyewitness identifications; and (3) his statements to police.

Ground 3: Edmisten's guilty plea was not knowing, voluntary, and intelligent, in violation of due process under the Fifth and Fourteenth Amendments because the trial court failed to inform him of the nature of the charges and the elements of the offenses.

ECF No. 41. The Court will deny relief on the remaining claims in the amended petition and deny a certificate of appealability.

///

---

[1] According to the state corrections department's inmate locator page, Edmisten is incarcerated at Ely State Prison. The department's website reflects William "Bill" Gittere is the warden for that facility. https://ofdsearch.doc.nv.gov/form.phpAt the end of this order, the Court directs the clerk to substitute William Gittere for respondent Dwight Neven, under, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

[2] This Court had deferred ruling on this petition as there were pending appellate decisions that might have impacted the Court's order in this case. Those related appellate cases have all been resolved.

## II. BACKGROUND

The Court summarizes the relevant state court record as a backdrop to consideration of the issues in the case.[3]

### A. Summary of the Offenses

i.  Nielson Robbery

At grand jury proceedings, Ronald Nielson testified he was visiting Las Vegas on June 4, 2013, at around 6:10 a.m. ECF No. 42-10 at 14. He was talking on his phone while walking on the bridge from the Tropicana to the MGM Grand. Id. at 13–15. As Nielson went down the escalator, a man came up behind him, put a black gun to the side of his face, and said "for a hundred dollars I'll let you live." Id. at 18–19. Nielson said he handed the robber "two 50s" and the robber told him "I'm going to be nice to you and let you keep your ID and your wallet." Id. at 20.

Nielson described the robber as Caucasian or "possibly Hispanic" wearing a bright yellow hat, a tank top, something around his neck, and pants that were possibly green. Id. at 16–18, 23. Nielson identified himself and the robber in photographs originating from surveillance video of the robbery. Id. at 16–17, 21. Nielson also identified the robber as depicted on surveillance video captured at 6:13 a.m., in which the robber walked down the street wearing a gray tank top, a shirt around his shoulders, and a hat bearing white and orange florescent colors. Id. at 18, 21–22.

Nielson said police showed him a photographic array of suspects the day after the robbery. Id. at 22. Police instructed him that he need not identify anyone in the array, and it was just as important to set the innocent free as to identify the guilty. Id. Nielson identified the individual depicted in photograph number six as a "possibility." Id. at 23.

At grand jury proceedings, Las Vegas Metropolitan Police Department ("Metro") Detective Brian Mildebrandt testified he presented to Nielson a photographic six-pack line-up array, which included Edmisten's photograph as number five, but Nielson identified the individual in photograph number six with about 50-percent certainty. ECF No. 15-1 at 8–11, 13–14.

---

[3] The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the same solely as background to the issues presented in this case and does not summarize all such material. No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by this Court. Any absence of mention of a specific piece of evidence or category of evidence does not signify the Court overlooked the evidence in considering the claims.

Mildebrandt testified that during his investigation of the Nielson robbery, he administered Miranda[4] warnings to Edmisten (following his arrest for the Walgreens offenses discussed below) and Edmisten confessed he robbed a man on the overpass between the MGM and the Tropicana at around 6:00 a.m. Id. at 9–10. Edmisten told Mildebrandt he put a "BB gun" to the man's head and told him "Give me a hundred dollars and I'll let you live."[5] Id. Edmisten said the man gave him two fifty-dollar bills. Id. at 10. Edmisten said he robbed the man because he needed money for food and a place to stay but he used $80 for methamphetamine. Id. at 11. Edmisten confessed the BB gun used in the MGM robbery "was the same one that he was arrested with the next day at Walgreens." Id. at 10. Mildebrandt said that based on his training and experience, Edmisten's representation that he used methamphetamine daily, and Edmisten's behavior and mannerisms, he could tell Edmisten was under the influence of some narcotic (but was not tested). Id. at 11. Mildebrandt said Edmisten was "coherent," and his responses were appropriate to Mildebrandt's questions. Id. at 12.

ii.    Walgreens Offenses

During grand jury proceedings, David Holder testified he and Rosaura Lopez-Polanco were working the graveyard shift at the Walgreens located between Palazzo and the Venetian on Las Vegas Boulevard at 1:00 a.m. on June 5, 2013. ECF No. 42-10 at 26–28. Holder saw Edmisten holding a sandwich and later walking to the door with a bulge in his shirt, so Holder, who stationed himself at the door, asked for the sandwich. Id. at 27–28. Lopez-Polanco also requested the sandwich, but Edmisten went "out the door," turned around, and pointed a black firearm at Lopez-Polanco, who was standing right next to Holder. Id. at 28–29. Holder said Edmisten used an aggressive tone and the firearm looked like a Glock .45. Id. at 28–29, 33. Holder said Lopez-Polanco called police, who arrived "four to five minutes later." Id. at 30.

Metro Officer Matthew Dannenberger testified he and Officer Larry DeSosa were patrolling Las Vegas Boulevard around 1:00 a.m. on June 5, 2013, when they were alerted to a

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

[5] Metro firearms analysis manager Randall Stone testified at the grand jury proceedings that a "BB gun" is a "type of firearm." Id. at 7–9.

robbery in progress at Walgreens. Id. at 35–37. The officers saw Edmisten, who matched the robber's description, walking on the sidewalk eating a sandwich. Id. at 37. The officers flipped on their vehicle's lights and siren and exited their vehicle to stop Edmisten, but Edmisten fled inside the Casino Royale. Id. The officers chased Edmisten on foot through the Casino Royale to the driveway of the Venetian. Id. at 38. Edmisten dropped to the ground as soon as the officers pulled out their firearms and ordered him to stop. Id. Dannenberger saw DeSosa remove a danish from Edmisten's pocket when DeSosa took him into custody. Id. at 38–39.

Police fished a black BB gun out of the Venetian canal after a passerby told them Edmisten tossed something into it. Id. at 39–40. Metro firearms analysis manager Randall Stone testified the BB gun the police retrieved was initially inoperable but fired after he removed a jammed pellet from the chamber. Id. at 9–11. Mildebrandt testified Edmisten told him that he committed the Walgreens offenses because he was hungry, and that he tossed the gun while running from police. ECF No. 15-1 at 12.

Holder testified he and Lopez-Polanco were taken separately to view Edmisten about "eight to ten minutes" after Lopez-Polanco called police. Id. at 30–32. Police gave Holder "show up" instructions advising him, inter alia, he need not identify anyone. Id. at 31–32. Holder observed Edmisten handcuffed and standing next to three officers. Id. at 32; see also 41–42. Holder identified Edmisten as "the same person," wearing "[t]he exact same clothes." Id. at 32.

**B. Procedural Summary**

    i.   Complaints and Indictment

On June 6, 2013, the State filed a complaint charging Edmisten with crimes related to the Walgreens incident ("Walgreens complaint"), including (1) burglary; (2) two counts of robbery (for Holder and Lopez-Polanco respectively); and (3) obstructing a public officer. ECF No. 42-3. At arraignment on the Walgreens complaint, the state district court scheduled a preliminary hearing for 15 days later, on June 21, 2013. ECF No. 42-5 at 4.

On June 10, 2013, the State filed a separate complaint charging Edmisten with one count of robbery with the use of a deadly weapon for the Nielson robbery ("Nielson complaint"). ECF

No. 42-6. At arraignment on the Nielson complaint, the state district court scheduled a preliminary hearing for 15 days later, on June 24, 2013. ECF No. 42-4 at 3.

On June 21, 2013 (the time scheduled for a preliminary hearing on the Walgreens complaint), the State voluntarily moved to dismiss the Walgreens complaint "pursuant to statute," and the state district court granted the motion "without prejudice" under NRS § 174.085. ECF Nos. 42-5 at 2; 42-7 at 9. At that hearing, the State represented it had a grand jury scheduled on July 2, 2013, and defense counsel stated she was aware the State intended to dismiss the complaint and pursue the charges by grand jury indictment. ECF No. 42-7 at 4, 8.

On June 24, 2013 (the time scheduled for the preliminary hearing on the Nielson complaint), the State moved to continue the preliminary hearing for the Nelson matter. ECF No. 42-9. The State filed an affidavit, signed under oath, stating (1) Nielson was the victim and an essential witness, no other witness could testify about his knowledge of the offense, and Nielson resided out of state; (2) a subpoena for Nielson's attendance at the June 24, 2013 preliminary hearing had previously issued on June 8, 2013 and the district attorney's Out-of-State Desk contacted Nielson; (3) Nielson was unable to travel to Nevada on the date scheduled for the preliminary hearing due to a prior commitment but was available to testify on July 2, 2013; and (4) the motion was made in good faith and not for the purpose of delay.[6] Id. at 4.

In response to the State's motion, defense counsel argued the motion was made for purposes of delay and not in good faith because, as the prosecutor stated at the preliminary hearing for the Walgreens complaint, the state wished to hold Edmisten in custody while the State sought a grand jury indictment that would consolidate the offenses set forth in the Nielson and Walgreens complaints. ECF No. 83-1 at 4–5. Counsel argued the state district court should deny the State's motion, dismiss the Nielson complaint at the preliminary hearing, release Edmisten, and send a

---

[6] The motion was made under Hill v. Sheriff of Clark Cnty., 85 Nev. 234, 235–36, 452 P.2d 918, 919 (1969),which held a party seeking continuance of preliminary hearing based on absence of witness must show good cause by submitting an affidavit stating: "(a) the names of the absent witnesses and their present residences, if known; (b) the diligence used to procure their attendance; (c) a brief summary of the expected testimony of such witnesses and whether the same facts can be proven by other witnesses; (d) when the affiant first learned that the attendance of such witnesses could not be obtained; and E) that the motion is made in good faith and not for delay." See also NRS § 171.196(2), as amended by 1997 Laws, c. 64 § 1. ("If the defendant does not waive examination, the magistrate shall hear the evidence within 15 days, unless for good cause shown the magistrate extends such time.").

summons once the grand jury indicted Edmisten. Id. at 5. The State explained it was not requesting a continuance for purposes of delay and would have presented Nielson's testimony at the June 24, 2013, preliminary hearing had Nielson come to court, but Nielson lived out of state. Id. at 6. The state district court granted the motion and continued the preliminary hearing for the Nielson complaint to July 2, 2013.[7] Id. at 11.

The next day, on June 25, 2013, the grand jury heard testimony from Detective Hildebrandt concerning the Walgreens offenses. ECF No. 15-1.

On July 2, 2013 (the date scheduled for the continued preliminary hearing on the Nielson complaint), defense counsel moved to dismiss the Nielson complaint because the State was unprepared to conduct a preliminary hearing. ECF No. 83-2 at 3–8. The state district court granted the motion "without prejudice." Id. Later that day, a grand jury returned a true bill to indict Edmisten for the same charges alleged in the Walgreens and Nielson complaints. ECF No. 42-10 at 45.

The next day, the State filed a grand jury indictment against Edmisten alleging (1) three counts of robbery with use of a deadly weapon; (2) burglary while in possession of a firearm; and (3) resisting a public officer with use of a firearm, occurring June 4 to 5, 2013. ECF No. 15-3. It was alleged that each of the robberies was conducted with use of a firearm and committed "by means of force or violence or fear of injury to, and without the consent and against the will of" the victims, Nielson, Holder, and Lopez-Polanco. Id. at 3. The State subsequently amended the indictment omitting count five for resisting a public officer. ECF No. 15-7.

ii.   Guilty Plea

On November 21, 2013, Edmisten signed a guilty plea agreement by which he agreed to plead guilty to one count of robbery (without a firearm enhancement) for the Walgreens and Nielson robberies, pursuant to a second amended indictment, which was attached to the plea agreement as Exhibit 1. ECF No. 15-21 at 2, 8–9. The parties stipulated to a sentence of probation,

---

[7] In response to Edmisten's request for release on house arrest, the state district court reduced bail by 50% and informed Edmisten he could post bail and seek qualification for house arrest. Id. at 8–11.

conditioned upon successful completion of either drug court, mental health court, or an inpatient treatment program, and an underlying sentence of 2 to 5 years. Id. at 2.

Under the terms of the agreement, Edmisten agreed that by pleading guilty, he admitted "the facts which support all the elements of the offense(s)" "as set forth in Exhibit '1.'" Id. at 3. Exhibit 1 specifically alleged Edmisten took money from Nielson and food from, or in the presence of, Holder and Lopez-Polanco, and that each robbery was conducted "willfully, unlawfully, and feloniously," and "by means of force or violence or fear of injury to and without the consent" and against the will of each victim. Id. at 8–9.

Under a section of the plea agreement entitled "VOLUNTARINESS OF PLEA," Edmisten agreed: "I discussed the elements of all of the original charge(s) against me with my attorney and I understand the nature of the charge(s) against me." Id. at 5. Edmisten further agreed: "I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor," and that his attorney explained to him "all of the foregoing elements, consequences, rights, and waiver of rights" set forth in the agreement. Id. at 6. Edmisten also agreed that his attorney "answered all of [his] questions" regarding the plea agreement and its consequences to his satisfaction and he was satisfied with his attorney's services. Id.

As set forth in the plea agreement, Edmisten agreed he believed that "pleading guilty and accepting this plea bargain" was in his "best interest," and a trial would be contrary to his best interest. Id. at 6. In the agreement, he confirmed he signed the agreement "voluntarily," after consulting his attorney and was "not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in the agreement." Id. He further agreed he was not then "under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair [his] ability to comprehend or understand this agreement or the proceedings surrounding" the entry of his plea. Id. By signing the agreement, Edmisten confirmed he understood that by pleading guilty and accepting the plea bargain, he forever gave up his rights to speedy trial, testify, remain silent, call witnesses, confront witnesses, appeal, and counsel "throughout all critical stages of the proceedings." Id. at 5.

Defense counsel attached a certificate confirming she "fully explained" to Edmisten the allegations to which his guilty pleas would be entered. Id. at 7. Counsel confirmed Edmisten's guilty plea was "consistent with the facts known" to her and the plea was made with her advice. Id. Based on counsel's knowledge and belief, she confirmed Edmisten was "competent," and "was not under the influence of intoxicating liquor, a controlled substance or other drug" when she consulted Edmisten about the agreement. Id. Counsel further confirmed, based on her knowledge and belief, that Edmisten understood "the charges and consequences of pleading guilty as provided in the agreement," executed the agreement, and would "voluntarily" plead guilty. Id.

At his change of plea hearing held on the same day that Edmisten signed the plea agreement, and his counsel executed the certificate for the plea agreement, Edmisten pleaded guilty in open court to robbery pursuant to his plea agreement. ECF No. 15-20 at 3, 5. Edmisten agreed his guilty plea was entered "freely and voluntarily," without threats or coercion. Id. at 5. He confirmed he does "read, write and understanding the English language." Id. at 4. Edmisten twice confirmed he read and understood the guilty plea agreement before he signed it. Id. at 5–6.

Edmisten confirmed he "received" a copy of the second amended indictment, understood the robbery charge, and had an opportunity to discuss it with his lawyer. ECF No. 15-20 at 4–6. He told the court he had discussed defenses to the charges. Id. at 7. He also agreed he had an opportunity to discuss with his lawyer anything he did not understand. Id. at 5–6. The state district court advised Edmisten he had a right to a speedy and public trial and the State would be required to prove at trial each of the material elements as alleged in the charging document by proof beyond a reasonable doubt. Id. at 7. Edmisten agreed his attorney explained to him what the State was required to prove. Id.

The state district court advised Edmisten if he were to go to trial, he had the rights to testify, remain silent, have others testify for him, confront and cross-examine witnesses, appeal any conviction, and to representation of counsel throughout all critical stages of the proceeding. Id. Edmisten agreed he understood he was giving up those rights by pleading guilty. Id.

Edmisten told the court he understood the range of punishment for robbery is 2 to 15 years, but he interjected the parties "stipulated to the 5" and he confirmed that he understood that if the

8

court did not agree to sentence him to probation with the stipulated five-year sentence, he could withdraw his plea, new charges would be reinstated, and he could go to trial. Id. at 6–7. Edmisten twice confirmed he had no questions for the court. Id. at 5–7.

Edmisten gave a factual basis for his guilty plea to the three robberies as follows:

> THE COURT: Can you tell me what you did in Clark County, Nevada, on or between June 4th, 2013, and June 5th, 2013, that makes you guilty of robbery?
>
> THE DEFENDANT: I was on a bridge by Tropicana and I robbed Mr. Nielson of a hundred dollars with a BB gun, Your Honor.
>
> THE COURT: So you used the threat of force or violence --
>
> THE DEFENDANT: Yes, intimidation.
>
> THE COURT: -- in order to get money?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Is the State satisfied with that?
>
> [THE STATE]: Your Honor, if I may, that was on June 4th of 2013. On the next day, it's charged in the alternative in this robbery count. There were two other victims; that on June 5th of 2013 he used force or violence against Rosaura Lopez-Polanco and/or David Holder, where he took food in their presence by means of force or violence.
>
> THE COURT: Did you do that as well?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 8. The state district court accepted Edmisten's plea, finding he understood the nature of the charges and the consequences of his plea and that his plea was entered freely and voluntarily. Id.

On March 27, 2014, the state district court sentenced Edmisten to probation with an underlying sentence of 2 to 5 years pursuant to the plea agreement. ECF Nos. 15-29. On November 20, 2014, the state district court reinstated probation with added conditions after finding that Edmisten violated probation. ECF No. 16-20. On January 14, 2015, the state district court revoked probation and imposed the underlying sentence of 2 to 5 years imprisonment. ECF No. 16-25. Edmisten challenged his judgment of conviction in postconviction proceedings. ECF No. 16-35.

///

///

///

## III.  GOVERNING STANDARDS OF REVIEW

### A.  Antiterrorism and Effective Death Penalty Act (AEDPA)

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–06 (2000), and citing Bell v. Cone, 535 U.S. 685, 694 (2002)). A state court's decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . [rather] [t]he state court's application of clearly established law must be objectively unreasonable." Id. (quoting Williams, 529 U.S. at 409–12) Internal citation omitted).

The Supreme Court has held, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, 538 U.S. at 75); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet" and "highly deferential standard for evaluating

state-court rulings, which demands state-court decisions be given the benefit of the doubt" (internal

quotation marks and citations omitted)).

**B. Standards for Evaluating Effective-Assistance-of-Counsel**

On Petitioner's claims of ineffective assistance of counsel, he must demonstrate (1) the

attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the

attorney's deficient performance prejudiced the petitioner such that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is a

petitioner's burden to show "counsel made errors so serious that counsel was not functioning as

the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 687.

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only

the right to effective assistance . . . ." Burt v. Titlow, 571 U.S. 12, 24 (2013). When considering

an ineffective assistance of counsel claim, a court "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance . . . ."

Strickland, 466 U.S. at 689 (citation omitted). On the performance prong, the issue is not what

counsel might have done differently but whether counsel's decisions were reasonable from his or

her perspective at the time. Id. at 689–90. A petitioner making an ineffective assistance claim

"must identify the acts or omissions of counsel that are alleged not to have been the result of

reasonable professional judgment." Id. at 690. In considering such claims, a court is obligated to

"determine whether, in light of all the circumstances, the identified acts or omissions were outside

the wide range of professionally competent assistance." Id. Under Strickland, strategic choices

made "after thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable." Id. On the other hand, "strategic choices made after less than complete

investigation are reasonable precisely to the extent that reasonable professional judgments support

the limitations on investigation." Id. at 690–91.

To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty

plea, petitioner must show counsel's advice fell below an objective standard of reasonableness and

there was a "reasonable probability" that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 58–59 (1985). The Supreme Court, applying Strickland to counsel's advice in plea negotiations, has held that where a defendant enters his guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 770–71 (1970). "A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence." Premo v. Moore, 562 U.S. 115, 129 (2011).

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,'" and when applied in tandem, "review is 'doubly so.'" See Harrington, 562 U.S at 105 (internal citations omitted); see also Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's Strickland determination under AEDPA, both AEDPA and Strickland's deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'") (citing Yarborough v. Gentry, 540 U.S. 1, 6 (2003)).

## IV. DISCUSSION

### A. Ground 1[8] — Effective-Assistance-of-Counsel

In Ground 1, Edmisten claims he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments, because, before he pleaded guilty, his counsel failed to move (1) to dismiss the indictment; (2) suppress eyewitness identifications presented to the grand jury; and (3) suppress his confessions. ECF No. 41 at 6–12. For the reasons discussed below, the state appellate court's determinations are neither contrary to, nor an unreasonable application of, Supreme Court authority, and are not based on an unreasonable determination of the facts.

///

---

[8] The Court subdivides Ground 1. Ground 1.1 addresses Edmisten's challenge to counsel's failure to move to dismiss the indictment. Ground 1.2 addresses Edmisten's challenge to counsel's failure to move to suppress the eyewitness identifications during the grand jury proceedings. Ground 1.3 addresses Edmisten's challenge to counsel's failure to move to suppress his confession.

i.   <u>The State Court Determination</u>

The state appellate court rejected Edmisten's claims as follows:

In his petition filed on August 11, 2014, appellant claimed that his counsel was ineffective. To prove ineffective assistance of counsel sufficient to invalidate a judgment of conviction based on a guilty plea, a petitioner must demonstrate that his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996). Both components of the inquiry must be shown. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). We give deference to the court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

First, appellant claimed that counsel was ineffective for failing to inform him that the State had a "conscious indifference to procedural rules" when it sought an indictment after the charges were dismissed by the justice court before the preliminary hearing. Appellant fails to demonstrate that counsel was deficient or that he was prejudiced. The State is allowed to seek an indictment after charges are dismissed before a preliminary hearing. *See* NRS 178.562(2). Further, appellant failed to demonstrate a reasonable probability that he would not have pleaded guilty had counsel informed him in this matter. Appellant received a large benefit from pleading guilty because he was originally charged with four felonies all with weapon enhancements. Appellant pleaded guilty to one count of robbery with no weapon enhancement and with a stipulation for probation. Therefore, the district court did not err in denying this claim.

Second, appellant claimed that counsel was ineffective for failing to challenge the victims' identification of him at the grand jury proceedings. Appellant fails to demonstrate that counsel was deficient or that he was prejudiced. One of the victims did not identify appellant at the grand jury proceedings and the fact that that victim identified someone else was presented to the grand jury. As to the other two victims, they identified appellant at the scene of appellant's arrest. The State presented the fact that appellant was handcuffed and next to police officers to the grand jury. Appellant failed to demonstrate a reasonable probability that he would not have pleaded guilty had counsel challenged the identification. Therefore, the district court did not err in denying this claim.

. . . .

Fourth, appellant claimed that counsel was ineffective for failing to suppress his statements made to the police. Appellant failed to demonstrate that he was prejudice because he failed to demonstrate a reasonable probability that he would not have pleaded guilty had counsel filed a motion to suppress. Appellant did not allege that he was not given *Miranda*

[FN2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

warnings, only that the State failed to demonstrate at the grand jury proceedings that he was given them. In addition, there was sufficient evidence that appellant committed the robbery at the Walgreens to sustain a conviction independent of his

1    confession. Further, as stated above, appellant received a substantial benefit by
     pleading guilty. Therefore, the district court did not err in denying this claim.

2    ECF No. 16-35 at 2–4.

3        ii.    Ground 1.1 — Failure to Challenge the Indictment

4        Edmisten claims his counsel was ineffective because she failed challenge the indictment on

5    the grounds that the prosecutor exhibited a "conscious and willful disregard for basic procedural

6    rules." ECF No. 41 at 6–10. The state appellate court reasonably applied <u>Strickland</u> when it

7    determined counsel's performance was neither deficient nor prejudicial.

8        At the relevant time, the State's voluntary dismissal of the Walgreens complaint was

9    permitted without cause and without barrier to later filing a new complaint or an indictment for

10   the same charges. <u>See</u> NRS § 174.085(5) (permitting the State to voluntarily dismiss a complaint

11   before a preliminary hearing without prejudice to the right to file a second complaint for the same

12   charges); NRS § 178.562(2) (the discharge of a person accused upon preliminary examination is a

13   bar to another complaint against the person for the same offense but does not bar the finding of an

14   indictment or filing of an information).

15       The State was also permitted to obtain a continuance of the January 24, 2013, preliminary

16   hearing for the Nielson complaint upon a showing of good cause due to Nielson's unavailability

17   to testify until July 2, 2013. <u>See</u> <u>supra</u>, pp. 5–6, n.5. The State's motion for continuance was

18   supported, to the satisfaction of the state district court, by written affidavit and the prosecutor's

19   verbal representations. <u>Id.</u> The state district court granted the motion but "short set" the preliminary

20   hearing on the Nielson complaint for July 2, 2013. <u>Id.</u> As the State prosecutor had represented,

21   Nielson was present in Las Vegas on July 2, 2013, because he testified before the grand jury. <u>See</u>

22   <u>supra</u>, p. 2. Although, the state district court granted the defense motion to dismiss the Nielson

23   complaint, as the state appellate court noted, the State could nevertheless pursue an indictment for

24   the charges alleged in both complaints. <u>See</u> NRS § 178.562(2). Under the circumstances, an

25   objectively reasonable attorney could have viewed a challenge to the indictment as fruitless.

26       The state appellate court reasonably applied <u>Strickland</u> when it determined Edmisten failed

27   to demonstrate his counsel performed deficiently or that there is a reasonable probability that if

28

1   counsel had challenged indictment he would not have been indicted or pleaded guilty and would

2   have insisted on going to trial. Edmisten is not entitled to relief on Ground 1.1.

3         iii.   Ground 1.2 – Failure to Challenge Eyewitness Identifications

4         Edmisten claims his counsel provided ineffective assistance by failing to challenge the

5   admissibility of the eyewitness identifications that were presented to the grand jury.[9] ECF No. 41

6   at 10–11. The state appellate court reasonably determined counsel's performance was not deficient

7   or prejudicial under Strickland.

8         The Supreme Court has held that "[a]n identification infected by improper police influence

9   . . . is not automatically excluded." Perry v. New Hampshire, 565 U.S. 228, 232, (2012). "If there

10  is 'a very substantial likelihood of irreparable misidentification,'" a "judge must disallow

11  presentation of the evidence at trial." Id. Internal citation to Simmons v. United States, 390 U.S.

12  377, 384, (1968)). On the other hand, "if the indicia of reliability are strong enough to outweigh

13  the corrupting effect of the police-arranged suggestive circumstances, the identification evidence

14  ordinarily will be admitted, and the jury will ultimately determine its worth." Id.

15        The following are "[a]mong factors to be considered" when evaluating the reliability of a

16  witness' identification for purposes of determining admissibility: (1) the witness' opportunity to

17  view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of

18  the witness' prior description of the criminal; (4) the witness' level of certainty demonstrated at

19  the confrontation; and (5) the time between the crime and the confrontation. Perry, 565 U.S. at

20

21         [9] In his pro se state court postconviction petition, petitioner claimed counsel was ineffective because she
    failed to move to suppress the identifications during the "grand proceedings." ECF No. 16-5 at 10. The state district
22  court and state appellate court each construed the claim as alleging trial counsel failed to move to suppress the
    identifications during the grand jury proceedings. ECF Nos. 16-22 at 6, 9; 16-35 at 3. The state courts appear to have
23  intentionally departed from the party presentation principle by addressing the effectiveness of counsel's failure to
    challenge the admissibility of the eyewitness identifications during the grand jury proceedings and before Edmisten's
24  guilty plea. See Greenlaw v. United States, 554 U.S. 237, 243–44 (2008) ("To the extent courts have approved
    departures from the party presentation principle in criminal cases, the justification has usually been to protect a pro
25  se litigant's rights.") (citing Castro v. United States, 540 U.S. 375, 381–83 (2003) (affirming court's authority to recast
    pro se litigant motions to "avoid an unnecessary dismissal" or "inappropriately stringent application of formal labeling
26  requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying
    legal basis" (citation omitted) (footnote omitted)). In his counseled amended federal habeas petition, Edmisten alleged
27  counsel was ineffective because "she failed to challenge the victims' identifications of Edmisten, as presented to the
    grand jury" and there was a reasonable probability "he would not have been indicted and would not have accepted the
28  guilty plea agreement," and would not have pleaded guilty and would have gone to trial, had counsel done so. ECF
    No. 41 at 10–11.

239, n.5 (citing <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114 (1977) (citing <u>Neil v. Biggers</u>, 409 U.S. 188, 199–200 (1972)).

According to Detective Mildebrandt's grand jury testimony, Nielson did not identify Edmisten in the photographic lineup array he showed to Nielson. However, in his grand jury testimony, Nielson identified himself and robber in photographs taken from video surveillance that captured the robbery. Nielson also identified the robber in surveillance video that captured the robber walking down the street a few minutes after the robbery, wearing the same clothes as in the video of the robbery. <u>See</u> <u>supra</u>, pp. 2–3.

An objectively reasonable attorney could determine a motion to preclude Nielson's identification of the robber in the photographs and videos was fruitless as there was no improper police influence and the question whether the photographs and videos corroborated Nielson's story and depicted Edmisten were questions for a jury. <u>See</u> <u>Perry,</u> 565 U.S. at 233 (holding where there is no improper law enforcement activity, eyewitness testimony is not excluded; rather, the reliability of the testimony is tested by, <u>inter alia</u>, vigorous cross-examination, protective rules of evidence, jury instructions on the fallibility of eyewitness identification, and the requirement that guilt be proved beyond a reasonable doubt).

Holder testified at the grand jury proceedings that he had a good opportunity to view Edmisten as "it is not hard to miss everybody" in the Walgreens store. He said he focused some attention on Edmisten for at least a minute while he watched Edmisten holding a sandwich, pacing behind the frozen yogurt machine, and walking to the exit door with a bulge in his shirt. According to Holder, only eight to ten minutes transpired between the time Edmisten exited the store and the "show up." Holder also testified he was certain about his identification because Edmisten was "the same person" and wore "the exact same clothes." And, to the extent there existed improper police influence, it was lessened by Holder's testimony that police instructed him he was not obligated to make an identification. <u>See</u> <u>supra</u>, pp. 3–4.

Despite the questionable "show up" circumstances In which Edmisten was handcuffed and held by three police officers, including at least one uniformed officer) counsel could reasonably conclude the totality of the circumstances favored a finding that Holder's identification was

reliable and admissible at trial. See Perry, 565 U.S. at 233; see also Brathwaite, 432 U.S. at 114 ("[R]eliability is the linchpin in determining the admissibility of identification testimony . . . .").

Under the circumstances, the state appellate court reasonably determined counsel's failure to challenge the identifications was objectively reasonable. Moreover, the state appellate court reasonably determined Edmisten failed to show a reasonable probability, given the favorable plea bargain and reliable identification evidence, that he would not have pleaded guilty and would have insisted on going to trial, had counsel pursued a motion to suppress the identifications. Edmisten is not entitled to federal habeas relief for Ground 1.2.

iv.    Ground 1.3 – Failure to Move to Suppress Statements to Police

Edmisten claims his counsel provided ineffective assistance by failing to move to suppress his statements to police because he did not knowingly waive Miranda rights. ECF No. 41 at 12.

A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice, as an element of ineffective assistance of counsel, when his counsel fails to seek suppression of his confession. Moore, 562 U.S. at 129–131 (holding that under AEDPA, state court reasonably determined petitioner was not prejudiced by counsel's failure to move to suppress his confession to police before petitioner entered a guilty plea to reduced charges because the State's case did not depend upon petitioner's confession and his plea permitted him to avoid the prospective of a harsher sentence).

As the state appellate court concluded, Edmisten failed to show a reasonable probability he would not have pleaded guilty had counsel filed a motion to suppress his statements to police because there was ample direct and circumstantial evidence, independent of his statements, to convict Edmisten for (at least) the Walgreens robberies.[10] Holder testified at the grand jury

---

[10] At the relevant time, robbery was defined in Nevada as follows:

Robbery is the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:

(a)   Obtain or retain possession of the property;

proceedings that he witnessed Edmisten take a sandwich from the Walgreens store and exit the store brandishing a firearm at Lopez-Polanco, who stood right beside Holder. Police testified Edmisten matched the description the Walgreens employee gave to police and police saw him walking down the street eating a sandwich. Edmisten fled when officers attempted to stop him, and police retrieved a danish from Edmisten's person when they took him into custody. Police retrieved a BB gun that Edmisten tossed in the Venetian canal. Holder identified Edmisten minutes after his capture as "the same person" wearing "the exact same clothes." See supra, pp. 3–4.

Edmisten also received a substantial benefit by striking a bargain for probation based on a guilty plea to only one count of robbery without a weapon enhancement, in lieu of the uncertainty of trial, potential convictions for multiple felony counts, and potential consecutive sentences with weapon enhancements, as alleged in the amended indictment.

The state appellate court reasonably applied Strickland's prejudice prong in rejecting this claim because Edmisten failed to show a reasonable probability he would not have pleaded guilty and would have insisted on going to trial. Edmisten is not entitled to federal habeas relief for Ground 1.3.

**B.  Ground 3**

Edmisten claims his guilty plea was not knowing, voluntary, and intelligent, because the state district court failed to ensure he understood the nature and elements of the charges, i.e., robbery requires taking personal property through force or fear. ECF No. 41 at 16–17.

A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (citing Brady v. United States, 397 U.S. 742, 748 (1970)). The voluntariness of a guilty plea is determined based on an examination

---

> (b)  Prevent or overcome resistance to the taking; or
> (c)  Facilitate escape.
> The degree of force used is immaterial if it is used to compel acquiescence to the taking or escaping with the property. A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

NRS § 200.380, as amended by 1995 Laws, p. 1187. Robbery is a general intent, not a specific intent, crime. Coats v. State, 98 Nev. 179, 180, 643 P.2d 1225, 1226 (1982).

of "all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749 (citations omitted). Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met, and the plea is invalid. Id. (citing Henderson v. Morgan, 426 U.S. 637, 645–47 (1976) (granting relief to a defendant who claimed his guilty plea to second-degree murder was involuntary because the State did not file a formal charge, which would have stated the elements of the crime to which he pleaded guilty, and defendant was not otherwise informed that the charge required proof that he harbored an intent to cause the victim's death)).

The Supreme Court, however, has "never held that the judge must himself explain the elements of each charge of the offense on the record." Stumpf, 545 U.S. at 183. "Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." Id. (citing Henderson, 426 U.S. at 647).

The state appellate court rejected this claim as presented to it as follows:

> [A]ppellant claimed that his plea was invalid because the district court did not ask him all of the appropriate questions, the district court did not provide him the law on robbery, and there was no factual basis given for the plea.
>
> A guilty plea is presumptively valid, and a petitioner carries the burden of establishing that the plea was not entered knowingly and intelligently. *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986); *see also Hubbard v. State*, 110 Nev. 671, 675, 877 P.2d 519, 521 (1994). Further, this court will not reverse a district court's determination concerning the validity of a plea absent a clear abuse of discretion. *Hubbard*, 110 Nev. At 675, 877 P.2d at 521. In determining the validity of a guilty plea, this court looks to the totality of the circumstances. *State v. Freese*, 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000); *Bryant,* 102 Nev. at 271, 721 P.2d at 367.
>
> Appellant failed to demonstrate his plea was invalid. While the district court did not ask him if he was under the influence of drugs or alcohol, it is clear from the record that appellant was able to understand the plea based on his answers to questions by the district court.
>
> > [FN 3] We note that contrary to appellant's claim, he was asked if he reads, writes, and understands the English language.
>
> As to the law on robbery, the elements were laid out in the plea agreement and appellant acknowledged that he read and understood the plea agreement. Further, appellant provided his own factual account as to one of the robberies committed. As to the other robbery, which was charged in the alternative, the State provided a factual basis that was adopted by appellant. Therefore, the district court did not err in denying this claim.

ECF No. 16-35 at 6–7.

For the reasons discussed below the state appellate court's determination is neither contrary to, nor an unreasonable application of, Supreme Court authority, and is not based on an unreasonable determination of the facts.

Edmisten twice confirmed that he read and understood his signed plea agreement, which included a charging document that formally and specifically alleged he took money from Nielson and food from, or in the presence of, Holder and Lopez-Polanco, and that each of those robberies was conducted "willfully, unlawfully, and feloniously," "by means of force or violence or fear of injury to and without the consent," and against the will of each victim. See supra, pp. 6–8.

Defense counsel confirmed in her certificate incorporated into Edmisten's guilty plea agreement that she "fully explained to the Defendant the allegations contained in the charge(s) to which guilty pleas are being entered," and that defendant was competent and understood "the charges and the consequences of pleading guilty as provided in this agreement." See supra, p. 7.

In his signed plea agreement, Edmisten confirmed he "discussed the elements of all of the original charge(s)" with his attorney and he understood the nature of the charges against him. He also agreed: "I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor" and that his attorney explained to him "all of the foregoing elements, consequences, rights, and waiver of rights" set forth in the agreement. Edmisten agreed his attorney "answered all of [his] questions" regarding the plea agreement and its consequences to his satisfaction. See supra, pp. 7–8.

At his change of plea hearing, Edmisten confirmed he could read, write, and understand English. He told the state district court that his attorney explained to him the charges and what the State was required to prove. He also evinced his understanding of the elements of robbery, and provided a factual basis for his guilty plea, when he agreed that he took food from the Walgreens victims using "force or fear" and stated he used a gun and intimidation to take money from Nielson. See supra, pp. 8–9.

The state appellate court reasonably determined Edmisten's guilty plea was knowing, voluntary, and intelligent, because the record belies a claim that he was not advised or did not

20

understand the elements of the crime to which he pleaded guilty. Edmisten is not entitled to federal habeas corpus relief for Ground 3.

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Edmisten. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). This Court therefore has sua sponte evaluated the claims within the petition for suitability for the issuance of a COA. See 28 U.S.C. § 2253(c); Turner v. Calderon, 281 F.3d 851, 864–65 (9th Cir. 2002). Under § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893, n.4 (1983)). Applying this standard, the Court finds a certificate of appealability is unwarranted.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that the amended petition (ECF No. 41) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied as to all grounds. Reasonable jurists would not find the Court's rejection of Grounds 1 and 3 debatable or wrong. Reasonable jurists would not find it debatable whether this Court was correct in its procedural ruling dismissing the speedy trial component of Ground 2 and that the remaining portion of Ground 2 was unexhausted, for the reasons stated in ECF No 61.[11]

///

///

///

///

///

///

---

[11] The Court granted Petitioner's motion to dismiss the unexhausted portion of Ground 2. ECF No. 66.

1    **IT IS FURTHER ORDERED** the Clerk of Court is directed to substitute William Gittere

2    for Respondent Dwight Neven.

3    **IT IS FURTHER ORDERED** that the Clerk shall enter judgment and close this case.

4    DATED: December 18, 2023

9    RICHARD F. BOULWARE, II
     UNITED STATES DISTRICT JUDGE

22